UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 04-12098

|  |  |
|---|---|
| GREGORY F. SANKEY,<br>    Plaintiff<br><br>v.<br><br>THE SHAW GROUP, INC. and<br>STONE & WEBSTER, INC.,<br>    Defendants | **MEMORANDUM OF LAW IN SUPPORT OF**<br><br>**DEFENDANTS' MOTION TO DISMISS COUNTS 9, 11, and 12 PURSUANT TO RULE 12(b)(6)** |

This lawsuit arises out of Gregory F. Sankey's ("Sankey") failed efforts to procure a job from Stone & Webster, Inc. ("S&W") in 2001. Sankey contends that S&W, a wholly owned subsidiary of The Shaw Group, Inc. (individually, "Shaw," or together with S&W, the "Defendants"), agreed to hire him for an at-will position, and then reneged on its offer and declined to hire him for the position.

The Defendants now move to dismiss Count 9 (Violation of the Massachusetts Civil Rights Act), Count 11 (Economic Duress) and Count 12 (Violation of M.G.L.c. 93A) of Sankey's Amended Complaint (the "Amended Complaint") pursuant to Fed.R.Civ.P. 12(b)(6) as such counts are patently inapplicable to the case at bar, and as they fail to state claims upon which relief may be granted.

I.     **STATEMENT OF FACTS AS ALLEGED IN SANKEY'S COMPLAINT**

According to the Amended Complaint, Sankey was employed by Stone & Webster Engineering Corporation ("SWEC") from 1973 through 2000.[1] See Amended

---

[1] S&W and Shaw adopt the facts alleged in Sankey's Complaint for purposes of this motion.

1

Complaint at ¶6. SWEC declared bankruptcy in the middle of 2000, and Shaw purchased SWEC's remaining assets. Id. at ¶9. Shaw retained Sankey through the end of the year; however, Sankey's position was eliminated on December 31, 2000, and Shaw chose not to extend Sankey's employment. Id.

Sankey began looking for a full time job in January of 2001. Id. at ¶10. Approximately nine months later, in September, 2001, Sankey spoke with one of SWEC's former vice-presidents, Thomas Horst ("Horst"), who informed Sankey that he had taken a position as Shaw's Vice President and Director of Shaw's E/I Division, and that he hoped to rehire Sankey for his management team. Id. at ¶12

During the same month, September of 2001, Sankey received an offer from another company, Sverdrup Civil, Inc. ("SCI"), to join that firm as its Boston Office Manager. Id. at ¶13. Sankey and SCI agreed to meet again on October 11 to finalize compensation terms. Id.

On October 5, Sankey met with Horst to further discuss the possibility of Sankey's working for S&W. Id. at ¶14. Sankey does not contend that Horst made any offer at that meeting, but rather asserts that Horst outlined generally what S&W's compensation terms would be should S&W hire Sankey. Id. On October 8, Sankey contacted SCI to discuss his possible compensation with that firm. Id. at ¶15. Sankey apparently deemed the possibility of re-joining S&W to be preferable to the SCI offer, and Sankey rejected SCI's offer. Id.[2]

On October 24, Sankey interviewed with Horst's supervisor, Walter Rhodes ("Rhodes"), and Rhodes stated that Horst would contact Sankey to finalize the terms of

---

[2] Sankey rejected the SCI offer on October 8, 2001; however, Sankey does not allege that he received any offer from S&W until October 30, 2001. Id. at ¶¶15, 21.

2

S&W's offer. Id. at ¶17. During the following week, Horst and Sankey continued to discuss and negotiate the terms of Sankey's employment, including the amount of Sankey's salary. Id. at ¶¶18-20.

According to the Amended Complaint, Horst made a job offer to Sankey on October 30, 2001 and Sankey accepted the position. Id. at ¶21. Horst emailed Sankey an unsigned "draft letter" for his review, containing the following terms:

- Sankey would be an at-will employee;

- Sankey's starting salary would be $185,000 per year;

- Sankey would receive a $30,000 signing bonus; and

- Sankey would have exclusive use of a company vehicle.

Id. at ¶22; also see Id. at Attachment 2; a copy of this document is also attached hereto as Exhibit A.

Notwithstanding the purported agreement, Sankey continued to negotiate over what type of company car he would receive. Id. at ¶¶23-24. Sankey contends that he and Horst ultimately agreed upon language for the offer letter, and that Horst informed him that he would need final approval from Shaw before could issue the offer letter. Id. at ¶¶26-28.

From November of 2001 through January of 2002, Sankey and Horst communicated regarding the potential offer, and Horst informed Sankey that he did not yet have approval from Shaw to issue the letter. Id. S&W ultimately elected not to hire Sankey and declined to provide Sankey with a final signed offer letter.

On February 15, 2002, Sankey sent a letter to Rhodes, seeking payment of $400,000 as damages for S&W's delay. Id. at Attachment 15, a copy of this document is

also attached hereto as Exhibit B. Rhodes responded on March 12, 2002, denying that S&W had offered Sankey a job, and accordingly, responding that Sankey was not entitled to compensation from S&W. Id. at Attachment 16, a copy of this document is also attached hereto as Exhibit C.

## II.  STANDARD OF REVIEW

In considering a motion to dismiss, "[a] court's inquiry is a limited one, focusing not on whether the plaintiff will ultimately prevail but on whether the plaintiff should be entitled to offer evidence to support a claim." Canty v. Old Rochester Reg'l Sch. Dist., 54 F.Supp.2d 66, 68 (D.Mass.1999). A court should accept the well-pleaded complaint as true and indulge every reasonable inference in favor of the plaintiff. Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir.1990). This standard of review "does not mean, however, that a court must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized." U.S. v. AVX Corp., 962 F.2d 108, 115 (1st Cir.1992). "[A] reviewing court is obliged neither to credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation, nor to honor subjective characterizations, optimistic predictions, or problematic suppositions. Empirically unverifiable conclusions, not logically compelled, or at least supported, by the stated facts, deserve no deference." Id.

As set forth below, Counts 9, 11, and 12 of Sankey's Amended Complaint fail, even under this liberal standard, and accordingly, should be dismissed as a matter of law.

## III.  SANKEY CANNOT SUSTAIN A CAUSE OF ACTION FOR VIOLATION OF THE MASSACHUSETTS CIVIL RIGHTS ACT (COUNT 9)

Sankey's claim for violations of the Massachusetts Civil Rights Act (the "MCRA") fails to state a claim upon which relief may be granted as Sankey has not

4

alleged, and cannot prove, that the Defendants affected any of his constitutional rights. Sankey alleges that, "[b]y their improper, deceptive, fraudulent, illegal, controlling, and manipulative conduct complained of herein, the Defendants interfered with one or more rights of Sankey secured by the United States Constitution and/or a right secured by the Constitution of the Commonwealth of Massachusetts." See Complaint at ¶61. This conclusory allegation, amounting to a summarization of the MCRA, is not sufficient to state a claim for relief under the Act. See Hobson v. McLean Hosp. Corp., 402 Mass. 413, 522 N.E.2d 975 (1988) ("The plaintiff does not identify, and we do not discern, what right guaranteed to her by Massachusetts law is concerned.").

Sankey's Amended Complaint contains a recitation of the elements required for a claim under the MCRA, but does not provide any specific facts justifying his assertion. To establish a claim under the state Civil Rights Act, a plaintiff must prove that his or her exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth have been interfered with, or attempted to be interfered with, and that the interference or attempted interference was by threats, intimidation, or coercion. Brunelle v. Lynn Public Schools, 433 Mass. 179, 740 N.E.2d 625 (2001); Howcroft v. City of Peabody, 51 Mass.App.Ct. 573, 747 N.E.2d 729 (2001).

Massachusetts cases decided under the MCRA have addressed issues such as employer imposed drug testing (which their employees contended violated their 4th Amendment rights), or retaliation for employees' political activity (which the employees contended violated their 1st Amendment rights). see e.g. Webster v. Motorola, Inc., 418 Mass. 425, 637 N.E.2d 203 (1994)); Redgrave v. Boston Symphony Orchestra, Inc., 855 F.2d 888 (1st Cir. 1988), cert. denied --- U.S. ---, 109 S.Ct. 869, 102 L.Ed.2d 993

5

(1989)). None of these circumstances occurred in Sankey's case. Sankey has not alleged that the Defendants attempted to interfere with his right to vote, exercise free speech, protect his privacy, or any other recognized constitutional right. Likewise, Sankey has not alleged that the Defendants were motivated by any desire to retaliate against Sankey for his exercise of such rights. Instead, Sankey alleges that the Defendants breached their contract by refusing to hire him for a potentially lucrative at-will job. This does not amount to an attempt to interfere with a constitutional right.

The Massachusetts Appeals Court has declined to find a violation of the MCRA where a plaintiff chooses one career opportunity in favor of another. See e.g., Saxonis v. City of Lynn, --- N.E.2d ----, 2004 WL 2481308, (2004). In Saxonis, a plaintiff closed her existing business (a beauty salon) in reliance upon the defendant's promise to hire her for a permanent position (as a cosmetology teacher at Lynn Vocational Technical Institute). Saxonis v. City of Lynn, --- N.E.2d ----, 2004 WL 2481308, (2004). The Massachusetts Appeals Court dismissed the plaintiff's MCRA count finding that defendant's refusal to hire her for an at-will position did not constitute interference with or an attempt to interfere with Saxonis's rights by threats, intimidation, or coercion. Id.

Sankey cannot contend that S&W deprived him of a protected constitutional right by refusing to hire him, as an at-will position is not a constitutional right protected by the MCRA. See e.g. Columbus v. Biggio, 76 F.Supp.2d 43 (1999). Sankey's claim, that he was deprived of an at-will position with S&W, is not sufficient to trigger the MCRA as he had no protected property right in his position with the company. Massachusetts courts have declined to allow MCRA claims where the affected "right" was the loss of an at-will position. See e.g., Columbus v. Biggio, 76 F.Supp.2d 43 (1999). In Columbus, a

6

town building inspector was pressured to retire from his position. He sued under several theories (including MCRA); however, the court held that as an at-will employee the plaintiff had no protected property right. Id. (citing Irvin v. McGee, No. 78866, 1993 WL 818806, (Sup.Ct. of Mass., Sept. 27, 1993) (at will employee does not have claim to continued employment).

Sankey cannot demonstrate that the Defendants interfered with a constitutionally protected right, and cannot show that the Defendants used threats, intimidation, or coercion against him. Under these circumstances, Count 9 of Sankey's Amended Complaint fails to state a claim upon which relief may be granted, and should be dismissed as a matter of law.

## IV. SANKEY CANNOT SUSTAIN A CAUSE OF ACTION FOR ECONOMIC DURESS (COUNT 11)

Count 11 of Sankey's Amended Complaint fails to state a claim upon which relief may be granted as (1) Massachusetts Courts do not recognize "Economic Duress" as an affirmative claim, and (2) Sankey cannot show that S&W or Shaw forced him to do anything "involuntarily."

Massachusetts courts do not recognize economic duress as an affirmative claim for recovery; rather, this doctrine has *only been allowed as a defense* to breach of contract actions. An exhaustive search of Massachusetts case law identified no case where a court awarded affirmative damages based upon a count for economic duress. See e.g. Coxall v. Gonfrade, 1995 WL 1146819 (Mass.Super.)("the court is not aware of any such cause of action under Massachusetts law"). Accordingly, Count 11 fails as a matter of law.

Even if Sankey were allowed to pursue a claim for economic duress, he would still be unable to maintain such a claim as he has not alleged, and will not be able to

7

prove, that S&W and Shaw forced him to enter into a contract "under the influence of such fear as precludes him from exercising free will and judgment." Coveney v. President & Trustees of the College of the Holy Cross, 388 Mass. 16, 22 (1983), quoting Avallone v. Elizabeth Arden Sales Corp., 344 Mass. 556, 561 (1962). Courts evaluating economic duress claims have imposed a high standard, finding that the party making such a claim "must show a high level of oppression." See Guenin v. Benson, 1999 Mass.App.Div. 94, 1999 WL 788624 (citing Comment 6, G.L.c. 106, § 3-305). An instrument "signed at the point of a gun is void," and serves as an example of the level of duress necessary to render an instrument invalid. Id. (citing International Underwater Contractors, Inc. v. New England Telephone and Telegraph Company, 8 Mass.App.Ct. 340, 342, 393 N.E.2d 968 (1979).

Sankey had several alternatives to pursuing S&W during the period in which Sankey contends that he was subjected to economic duress. Sankey could have declined to work for S&W and returned to his engineering/consulting practice, or attempted to seek other employment with SCI or some other employer. Absent compelling circumstances, the availability of a reasonable alternative will defeat a claim of duress. See Ismert and Associates v. New England Mut. Life Ins., 801 F.2d. 536, 549 (1st Cir.1986); see also Delaney v. Chief of Police of Wareham, 27 Mass.App.Ct. 398, 408 (1989).

Massachusetts courts do not recognize economic duress as an affirmative cause of action; however, even if Massachusetts allowed a party to recover damages for economic duress, Sankey has not alleged facts sufficient to show that such duress occurred in the

present case. Based upon these facts, Sankey's claim for economic duress fails to state a claim upon which relief may be granted.

## V. SANKEY CANNOT SUSTAIN A CAUSE OF ACTION FOR VIOLATION OF M.G.L.c. 93A (COUNT 12)

Sankey cannot recover under the Massachusetts Consumer Protection Statute (M.G.L. c. 93A § 11), as the statute does not apply to employment-related disputes. Further, Sankey's allegation that the Defendants committed a c. 93A violation by failing to respond to his settlement demands is misplaced, as the Defendants clearly stated their position in Rhodes's March 12, 2002 letter.

### A. An Employment Dispute Cannot Form the Basis of a M.G.L.c. 93A Claim

Massachusetts courts have consistently ruled that disputes arising from employment agreements *do not* fall within the scope of M.G.L. c. 93A § 11. Informix v. Rennell, 41 Mass.App.Ct. 161, 668 N.E.2d 1351 (1996); See e.g. Dorfman v. TDA Industries, Inc., 16 Mass.App.Ct. 714, 455 N.E.2d 457 (1983); Manning v. Zuckerman, 388 Mass. 8, 444 N.E.2d 1262 (1983).

Chapter 93A applies only to behavior that occurs in the "conduct or trade of any commerce." See M.G.L. c. 93A §2. Under Massachusetts law, an entity is "engaged in trade or commerce" when it advertises or sells any property or services of kind offered generally by person for sale to public in business transaction. Trustees of Boston University v. ASM Communications, Inc., 33 F.Supp.2d 66 (1998). Employment disputes do not fall within this category as "...contract disputes between an employer and an employee ... are principally 'private in nature' and do not occur in the ordinary 'conduct of any trade or business' as contemplated by the statute." Manning, supra. at

14, 444 N.E.2d 1262.

In rejecting a cause of action for such relief, the Supreme Judicial Court noted that state and federal law already provides strong protections for prospective and current employees:

> In light of these comprehensive protections for employees and after ten years of existence of § 11, it would be somewhat surprising if we should now conclude that the Legislature intended that allegedly unlawful acts under G.L. c. 93A, § 2(*a*), and § 11, also include matters arising from an employment relationship.

See Id. at 12.

Sankey's Amended Complaint fails to allege facts supporting the "business" or "commerce" element of c. 93A, § 11. See First Enterprises, Ltd. v. Cooper, 425 Mass. 344, 347-348, 680 N.E.2d 1163 (1997) (a violation of § 11 requires proof that the acts complained of were perpetrated in a business context). Sankey's claim arises solely from his efforts to procure a job with S&W, and Massachusetts courts have expressly held that such activities do not qualify as trade or commerce for purposes of c. 93A. See Manning, supra. at 14, 444 N.E.2d 1262. Under these circumstances, Sankey is not entitled to relief under c. 93A, and accordingly, Count 12 must be dismissed as it fails to state a claim upon which relief may be granted.

### B. Attorney Froio's March 29, 2002 Letter Cannot Create Liability Under c. 93A

Sankey's claim that the Defendants violated c. 93A by not responding to Attorney Froio's March 29 letter is incorrect, as (a) Attorney Froio's letter was not a proper c. 93A demand; and (b) the Defendants had already responded to the same assertions and demands approximately three weeks before.

- **Attorney Froio's Letter was not a Proper c. 93A Demand**

The Defendants had no statutory obligation to respond to Attorney Froio's March 29, 2002 letter, as the letter was not a proper c. 93A demand. See Amended Complaint at Attachment 17, a copy of which is attached hereto as Exhibit D. In order to qualify as a c. 93A demand, a letter must specifically inform the prospective defendant that relief will be sought under c. 93A. Cassano v. Gogos, 20 Mass.App.Ct. 348, 480 N.E.2d 649 (1985). This can be accomplished by the letter's mentioning one of the following six factors: (1) an express reference to c. 93A; (2) an express reference to the Consumer Protection Act; (3) an assertion that the rights of the claimant as a consumer have been violated; (4) an assertion that the prospective defendant has acted in an unfair or deceptive manner; (5) a reference that the claimant anticipates a settlement offer within 30 days; or (6) an assertion that the claimant will pursue multiple damages and legal expenses, if relief is denied by the prospective defendant. Id. at 351.

Attorney Froio's letter did not meet any of these criteria and gave no indication that the letter was intended to trigger the protections and penalties of c. 93A. The letter did not reference the statute or warn of the potential for double or treble damages thereunder, and did not state that a response was required within 30 days (as required under the statute), but instead demanded a response within two weeks, thus giving the impression that the letter was not intended as a c. 93A demand.

A letter which does not identify that it is intended to invoke c. 93A, cannot form the basis for liability under that statute. See MacKenzie v. Auto Supermart, Inc., 1998 Mass.App.Div. 5, 7; also see Hadar v. Concordia Yacht Builders, Inc., 886 F.Supp. 1082 (S.D.N.Y.1995) (applying Mass. law) (demand letter was inadequate because it did not

inform defendants that plaintiff intended to seek relief under the Consumer Protection Act). The purpose of the statutory written demand is to encourage settlements and to apprise the defendants of the potential penalties facing them in litigation. That objective is not brought closer by keeping the nature of the action concealed. Id.

Attorney Froio's letter provided no indication that the letter was intended as a precursor to a 93A complaint. The letter did not identify any conduct as unfair or deceptive or warn of the possible recovery of multiple damages and attorneys' fees under the act. Under these circumstances, the letter does not qualify as a c. 93A demand, and Sankey cannot contend that the Defendants violated the statute by declining to respond.

- **Sankey Cannot Create Liability by Sending Repeated Letters Making the Same Demands**

Sankey alleges that the Defendants violated c. 93A by failing to respond to his attorney's March 29, 2002 letter; however, the Defendants had already responded to the same claims and demands in responding to Sankey's February 15, 2002 letter.

Sankey (and counsel) sent two letters, approximately six weeks apart, asserting that S&W had offered him a position, and demanding that the Defendants pay him $400,000 as compensation for their decision not to hire him. S&W responded to the first letter on March 12, 2002, denying that S&W had offered to hire Sankey, and declining Sankey's demand for payment, but declined to respond to the second, which merely echoed the allegations and demands of the first letter.

Chapter 93A does not contain any provision requiring a party to respond to multiple repetitive demands for payment within a short period of time, particularly where such demands do not qualify as c. 93A demand letters. See generally, M.G.L.c. 93A. The Defendants responded appropriately to Sankey's February 25, 2002 letter and

12

apprised Sankey of their position on the issues raised therein. Sankey's March 29, 2002 letter did not contain any new claims or demands warranting a change in S&W's position. The Defendants decision not to respond to a second letter did not prejudice Sankey in any way, nor force Sankey to institute litigation to learn the Defendants' position. Accordingly, Sankey's claim that the Defendants refusal to respond to Attorney Froio's March 29, 2002 letter constitutes a c. 93A violation must fail.

## CONCLUSION

The foregoing Counts 9, 11, and 12 of the Plaintiff's Amended Complaint fail to state any claim upon which relief may be granted. Accordingly, Counts 9, 11, and 12 of the Amended Complaint should be dismissed as a matter of law.

WHEREFORE, The Shaw Group, Inc. and Stone & Webster, Inc. respectfully request that this Honorable Court:

A. Dismiss Counts 9, 11, and 12 of the Plaintiff's Amended Complaint;

B. Award attorneys' fees and costs; and

C. Order such other relief as this Court deems just and proper.

Respectfully submitted,

THE SHAW GROUP, INC. and STONE & WEBTER, INC.

By its attorneys:

_Ken Rubinstein / PTM_
Richard C. Nelson, Esquire (BBO # 653790)
Kenneth E. Rubinstein, Esquire (BBO # 641226)
Nelson, Kinder, Mosseau & Saturley, P.C.
99 Middle Street
Manchester, NH 03101
(603) 647-1800

## CERTIFICATE OF SERVICE

I, Kenneth E. Rubinstein, Esquire, hereby certify that the foregoing Memorandum of Law in Support of Motion to Dismiss was this day forwarded to Anthony R. Bott, Esquire, 8 Beach Road, P.O. Box 1137, East Orleans, Massachusetts 02643, Counsel for Gregory Sankey.

Dated: December 13, 2004          By: _Ken Rubinstein / PTM_
                                       Kenneth E. Rubinstein, Esquire